FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

98 FEB 23 PM 3: 38

U.S. DISTRICT COUR
N.D. OF ALABAMA

HANH LE WHITE,                    )
                                  )
        Plaintiff                 )
                                  )      CIVIL ACTION NO.
        vs.                       )
                                  )      CV-97-AR-1877-S
BOARD OF TRUSTEES OF THE          )
UNIVERSITY OF ALABAMA, et         )
al.,                              )

        Defendants

ᏟᎻᎾ

**ENTERED**

FEB 2 3 1998

MEMORANDUM OPINION

        The court has for its consideration a motion for partial

summary judgment filed by defendant The Board of Trustees of the

University of Alabama ("UAB" or "Board"), and individual

defendants Lisa Russell, Martha Cook, Robert Centor, and Roland

Ficken, who are being sued in both their individual and official

capacities.  Also before the court are three discovery motions

filed by defendants.  First, defendants have moved to exclude the

testimony of Dr. Patricia Rippoepoe ("Rippoepoe") a physician who

treated the plaintiff, Hanh Le White ("Le").  In the alternative,

defendants seek to amend the court's scheduling order so that

they may pursue discovery relating to Rippoepoe's proposed

testimony.  Finally, defendants move to exclude all Le's evidence

of damages.

        The above-styled action involves charges of race/national

origin discrimination asserted by Le, a Vietnamese born

48

naturalized United States citizen.  Le asserts claims under Title VII, 42 U.S.C. § 2000e, *et seq*, Section 1983, 42 U.S.C. § 1983, the Fourth Amendment to the Constitution of the United States and Alabama law.  She seeks relief in the form of a declaratory judgment, permanent injunction, promotion, back-pay, front-pay, compensatory damages, nominal damages, punitive damages and attorney's fees.  The court finds that summary judgment for the defendants should be granted, in part, and denied, in part.  Additionally, the court will grant defendants' motion to exclude plaintiff's "expert" testimony.  However, the court is unable to determine whether Rippoepoe's testimony relates to opinions formed as a "treating physician," or as an "expert."  Therefore, the court cannot rule on the admissibility of Rippoepoe's testimony at this time.  The court will deny defendants' motion to amend the scheduling order, but the court will entertain a new motion filed on behalf of all involved parties.  Finally, the court will temporarily stay consideration of defendants' motion to exclude Le's evidence of damages

## I. SUMMARY JUDGMENT STANDARD

Under the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine issue as to any material fact and...the moving party is entitled to a judgment as a matter of law."  F.R.Civ.P. 56(c).

## II. TITLE VII CLAIMS

### A. Title VII Claims Asserted Against The Individual Defendants

Defendants argue that they are entitled to partial summary judgment for an assortment of reasons. First, they correctly argue that the individual defendants are not subject to suit under Title VII. Therefore the court will grant summary judgment for the individual defendants, in both their official and individual capacities, insofar as Le asserts Title VII claims against them. *See Holt v. Lewis*, 955 F. Supp. 1385, 1386 (N.D. Ala. 1995), *aff'd* 109 F.3d 771 (11th Cir.), *cert. denied,* ___ U.S. ___, 118 S. Ct. 67 (1997)(citing *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)).

### B. Claims Allegedly Outside Of Le's EEOC Charge

Defendants next contend that summary judgment is appropriate on Le's remaining Title VII claim, asserted against the Board, because Le's claims are outside the scope of her Equal Employment Opportunity ("EEOC") charge. In her EEOC charge, Le checked the box labeled "national origin" in response to the question regarding the cause of the alleged discrimination. Def.'s Ex. A. She also indicated, in her narrative, that she had been the victim of discrimination "because of [her] national origin." *Id.* However, in her amended complaint, Le asserts that she was discriminated against because of her "race/national origin."

Consequently, argues the Board, Le's race claims are outside the scope of her EEOC charge and therefore barred.

A Title VII plaintiff may pursue only those charges which are "like or related to allegations contained in [her EEOC] charge...In other words, the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)[1] (citations omitted).

Le's claims of race discrimination are not outside the scope of her EEOC charge.  Le's charge contains repeated references to preferential treatment that was allegedly given to "white employees."  She also complains of offensive remarks by peers and supervisors regarding Vietnamese food and music, and comments regarding "lynching individuals with whom they disagree."  Such allegations are certainly "like or related to" charges of race discrimination.  Indeed, an EEOC investigation into potential discriminatory treatment of Le based upon her race, Asian, "could reasonably be expected to grow out of the [national origin] charge of discrimination." *See Sanchez*, 431 F.2d at 466.  There

---

[1]  The Eleventh Circuit has adopted as precedent all Fifth Circuit Court of Appeals cases decided prior to October 1, 1981.  <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981).

is nothing in the charge indicating that Le would not would have been the target of the alleged discrimination if she had been an Asian of different national origin.  Consequently, it would have been unreasonable for the EEOC to limit its investigation to claims of discriminatory treatment directed at Le solely because she was a Vietnamese Asian.  *See id.* at 467 (quoting from an EEOC amicus brief, the Eleventh Circuit noted that the EEOC must "view the charge in its broadest reasonable sense....").   As the Eleventh Circuit has recognized, "[i]t cannot be doubted that 'a large number of the charges filed with the EEOC are filed by ordinary people unschooled in the technicalities of the law.'" *Id.* at 463 (citation omitted).  Accordingly, this court finds that Le's complaint does not contain charges outside the scope of her EEOC charge.[2]

## C. Alleged Failure To Exhaust Administrative Remedies

The Board's final Title VII argument surrounds Le's alleged failure to comply with required administrative procedures prior to filing her complaint.  Specifically, defendants claim that Le has failed to comply with "43 U.S.C. § 2000e-5(f)(1), which requires that a Notice of Right To Sue must be issued by the U.S.

---

[2] Several courts have reached the same conclusion under analogous circumstances. *E.g., Avagliano v. Sumitomo Shoji America, Inc.*, 614 F. Supp. 1397, 1402 (S.D.N.Y. 1985); *Dickson v. Mortgage & Trust, Inc.*, No. 73-H-963, 1975 WL 177, at *5 (S.D. Tex., May 1, 1975).

Department of Justice when the EEOC charge has been filed against a governmental agency such as The University of Alabama."[3]

---

[3] § 2000e-5(f)(1) provides:

(1) If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d) of this section, the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court. The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission or the Attorney General in a case involving a government, governmental agency, or political subdivision. If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such

Def.'s Br. at 4 - 5.  Le filed her discrimination charge with the

EEOC on October 16, 1996.  Def.'s Ex. A.  On May 22, 1997, at

Le's request, the EEOC administratively dismissed Le's charge and

issued a right to sue letter, because more than 180 days had

passed since Le filed her charge.  Def.'s Ex. C.  There is no

evidence that Le attempted to obtain a right to sue letter from

the Justice Department.


     Then District of Columbia Court of Appeals judge, Ruth Bader

Ginsburg, wrote:

>      The language of Title VII is dense on whether it
> is the EEOC's or the Attorney General's (i.e., the
> Justice Department's) duty to issue right to sue
> notices in cases involving governmental entities.
> Courts have tended to interpret Title VII as laying
> that responsibility at the Attorney General's door,
> focusing on the part of section 706(f)(1) that
> provides:
>
> > If a charge filed with the Commission ... is
> > dismissed by the Commission, or if within one
> > hundred and eighty days from the filing of

---

> > complainant and may authorize the commencement of the
> > action without the payment of fees, costs, or
> > security.  Upon timely application, the court may, in
> > its discretion, permit the Commission, or the Attorney
> > General in a case involving a government, governmental
> > agency, or political subdivision, to intervene in such
> > civil action upon certification that the case is of
> > general public importance.  Upon request, the court
> > may, in its discretion, stay  further proceedings for
> > not more than sixty days pending the termination of
> > State or local proceedings described in subsections
> > (c) or (d) of this section or further efforts of the
> > Commission to obtain voluntary compliance.

(emphasis supplied).

> such charge ... the Commission has not filed
> a civil action under this section or the
> Attorney General has not filed a civil action
> in a case involving a government,
> governmental agency, or political
> subdivision, or the Commission has not
> entered into a conciliation agreement to
> which the person aggrieved is a party,  the
> Commission, or the Attorney General in a case
> involving a government, governmental agency,
> or political subdivision, shall so notify the
> person aggrieved and within ninety days after
> the giving of such notice a civil action  may
> be brought [by the person aggrieved].

42 U.S.C. § 2000e-(f)(1).  Yet, as appellants point
out, an earlier sentence of that section indicates that
the EEOC will refer a case to the Attorney General only
if the EEOC's conciliation efforts fail:

> In the case of a respondent which is a
> government, governmental agency, or
> political subdivision, if the Commission has
> been unable to secure from the respondent a
> conciliation agreement acceptable to the
> Commission, the Commission shall take no
> further action and shall refer the case to
> the Attorney General who may bring a civil
> action against such respondent....

42 U.S.C. § 2000e-5(f)(1).  And under section 706(b) of
Title VII, the Commission attempts conciliation only if
it determines "that there is reasonable cause to
believe that the charge is true."  *Id.*  § 2000e-5(b).
If, however, the Commission determines there is not
reasonable cause, "it shall  dismiss the charge and
promptly notify the person claiming to be aggrieved and
the respondent of its action."  *Id.*  Thus, the
statutory language and  structure contemplate that the
Commission will issue right to sue notices in cases
involving a governmental unit when it does not find
probable cause.  The Attorney General will issue such
notices only when the EEOC finds probable cause,
conciliation efforts fail, and the EEOC refers the case
to the Justice Department, but the Attorney General
decides not to pursue the action.

In any event, in 1980 the Justice Department and EEOC reached an understanding that put this interpretation into practice.  The Justice Department itself requested that the EEOC issue right to sue notices to governmental bodies:

> We recommend that the Commission ... publish[ ] a new regulation ...  providing for the issuance of notices of right to sue along with dismissal in cases involving state or local governmental units.  We believe that adoption of this procedure nationwide will be consistent with the intent of Congress that once the administrative process is complete, the filing of suits should be permitted.  The new procedure will bring the procedure for state and local governments into accord with that for private sector respondents.

Letter from Assistant Attorney General Drew S. Days III to Eleanor Holmes Norton, Chair, EEOC (Mar. 17, 1980), reprinted in 45 Fed.Reg. 48,617-18 (1980).  The Commission followed the Justice Department recommendation, revising its regulations to provide:

> In all cases where the respondent is a government, governmental agency, or a political subdivision, the Commission will issue a notice of right to sue when there has been a dismissal of a charge....  In all other cases where the respondent is a government, governmental agency, or political subdivision, the  Attorney General will issue the notice of right to sue, including ... when there has been a finding of reasonable cause by the Commission, there has been a failure of conciliation, and the Attorney General has decided not to file a civil action.

29 C.F.R. § 1601.28(d) (1987).

Under both Title VII and the EEOC regulation, then, the Commission shall issue right to sue notices in cases involving governmental units when it finds no probable cause.  The Attorney General, however, shall do so where the Commission finds probable cause and

9

conciliation efforts fail, but the Attorney General declines to pursue the case.

*Dougherty v. Barry*, 869 F.2d 605, 611 (D.C. Cir. 1989) (emphasis supplied, but alterations and exclusions in original) (some citations omitted).  When the EEOC dismisses a charge for administrative reasons, the dismissal has the same effect as a finding of no probable cause.  *See* Barbara Linderman & Paul Grossman, *Employment Discrimination Law* 1527( 3d ed. 1996).  In other words, the EEOC issues the right to sue letter when it administratively dismisses a charge, as it did in Le's case.  *See Id.*; 29 C.F.R. § 1601.28 (d).  Applying Justice Ginsburg's 1989 analysis in *Daugherty*, the Board is not entitled to summary judgment on its claim that Le had a duty to obtain a right to sue letter from the Attorney General.

One might argue that now Justice Ginsburg's analysis is inapplicable given the Eleventh Circuit's opinion in *Fouche v. Jekyll Island-State Park Authority*, 713 F.2d 1518, 1524 (11th Cir. 1983).  In *Fouche*, which was handed down prior to *Dougherty*, the court held that a right to sue letter from the Attorney General is a condition precedent to a Title VII claim asserted against a governmental agency.  *Id.*  As a condition precedent, rather than a jurisdictional pre-requisite, the requirement "is subject to equitable waiver, modification, or estoppel," however.

10

*Id.* Indeed, in *Fouche* the Eleventh Circuit cited, with approval, a district court case where the Attorney General letter requirement was suspended because the plaintiff's EEOC right to sue letter mentioned nothing about obtaining a letter from the Attorney General. *Id.* at 1525 (citing *English v. Ware County Dept. of Family & Children Services*, 546 F. Supp. 689, 693 (S.D. Ga. 1982)).

This court notes that the EEOC right to sue letter in the present case likewise failed to inform the plaintiff that she was obligated to obtain an Attorney General letter before she could file suit. Instead, the EEOC letter merely informs the plaintiff that if she intends to sue she must do so "within ninety days of receipt of the notice." Def.'s Ex. C. The court also notes that any request by Le for an Attorney General letter would likely have been rebuffed. *See e.g., Solomon v. Hardison*, 746 F.2d 699, 702 (11th Cir. 1984) (citing letter from the Attorney General refusing to issue a right to sue letter after the EEOC dismissed plaintiff's case and issued the letter.); *Fouche*, 713 F.2d at 1525. Given the EEOC's regulations and the apparent futility of attempting to obtain a right to sue letter from the Attorney General, this court finds that Le's failure to obtain an Attorney General letter is excused. Thus, even assuming that the Eleventh Circuit would today ignore Justice Ginsburg's *Dougherty*

11

analysis and instead adhere to its *Fouche* analysis, Le's failure
to obtain her right to sue letter from the Attorney General is
not fatal to her Title VII claim.

### III. § 1983 CLAIMS

### A. Eleventh Amendment Immunity For The Board

Next, defendants assert various immunity defenses.  The
Board argues that it enjoys Eleventh Amendment immunity from §
1983 claims.  The board is correct; therefore summary judgment
for the Board is appropriate on Le's § 1983 claims.  *See Harden
v. Adams*, 760 F.2d 1158, 1163 (11th Cir.) (noting: 1)  that the
Eleventh Amendment protects state entities from § 1983 suits for
both damages and injunctive relief, and 2) that Alabama state
universities are state entities for purposes of Eleventh
Amendment immunity)(citations omitted), *cert. denied*, *Gimmer v.
Harden*, 474 U.S. 1007, 106 S. Ct. 530 (1985).

### B. Eleventh Amendment Immunity For The Individual Defendants

Next, the individual defendants contend that they are
entitled to immunity inasmuch as Le asserts § 1983 claims against
them in their official capacities.  First, the individual
defendants correctly argue that Le cannot seek retrospective
relief against them in their official capacities.   A suit
against an individual in her official capacity is, in effect, a
suit against the state.  *Carr v. City of Florence, Alabama*, 916

F.2d 1521, 1524 (11th Cir. 1990).  Because the Eleventh Amendment
bars retroactive damage suits against the state, *Id. at 1524*,
official capacity retroactive damage suits are likewise barred.[4]
*Welch v. Laney*, 57 F.3d 1004, 1008 (11th Cir. 1995).  Therefore,
the individual defendants are entitled to summary judgment, in
their official capacities, on Le's § 1983 claims for retroactive
relief.

The individual defendants also assert that Le cannot pursue
any § 1983 claims against them, in their official capacities, for
prospective equitable relief because she is unable to establish
the existence of a governmental policy or custom of
discrimination, as required by *Monell v. Department of Social
Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018 (1978).
In *Monell*, the United States Supreme court held that
municipalities and municipal officers, sued in their official
capacities, may only be held liable under § 1983 for the
execution of a governmental policy or custom.  *Id*. at 694, 98 S.
Ct. at 2037 - 38.

Defendants' argument might have been persuasive had Le
worked, during the time of the alleged discrimination, for a

---

[4] The court notes that such suits are not barred where the State has
waived immunity.  *Carr*, 916 F.2d at 1525.  However, such is not the case under
§ 1983.

13

municipal entity, rather than UAB, which is a state entity, *See Harden*, 760 F.2d at 1163 (noting that an Alabama state university is a state entity for purposes of Eleventh Amendment immunity). In *Monell,* the Supreme Court specifically limited its holding to "local government units which are not considered part of the State for Eleventh Amendment purposes." *Monell*, 436 U.S. at 691 n.54, 98 S. Ct. at 2036 n.54 (reaffirmed in *Quern* v. *Jordan*, 440 U.S. 332, 338, 99 S. Ct. 1139, 1144 (1979)). Given this limitation, *Monell's* "policy or custom" analysis is inapplicable to the present case. Accordingly, summary judgment is not appropriate on Le's § 1983 claims, for prospective relief, asserted against the individual defendants in their official capacities.

### III. FOURTH AMENDMENT CLAIMS

In her complaint, Le asserts violations of her Fourth Amendment rights. Defendants contend that summary judgment is appropriate on this claim because Le's allegations of employment discrimination in no way implicate the search and seizure provisions of the Fourth Amendment. In Le's response to defendants' motion for summary judgment, she choose not to respond to this assertion.   Once a motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse

14

party's response, by affidavits or as otherwise..., must set forth specific facts showing that there is a genuine issue for trial." F.R.Civ.P. 56(e). Le has not met her burden under Federal Rule 56(e), therefore summary judgment on Le's Fourth amendment claim will be granted.

## IV. DISCOVERY MOTIONS

### 1. Defendants' Motion To Exclude

Defendants ask the court to prevent Le from introducing any expert testimony at trial because Le has failed to comply with Federal Rule of Civil Procedure 26(a)(2)(B). Pursuant to Rule 26, and this court's October 10, 1997 scheduling order, Le was required to disclose the identity of, and provide reports from, any experts "retained or specifically employed to provide expert testimony...." F.R.Civ.P. 26(a)(2)(B). Defendants' motion is well taken and will be granted to the extent defendants attempt to exclude "expert" testimony.

Le does not dispute that she has failed to comply with the expert disclosure requirements, however. Instead, she argues that the expert testimony disclosure rules do not apply in the present case. Le disclosed, in her response to defendants' first set of interrogatories, that Dr. Patricia Rippoepoe is a witness in this case. Doc. 46, Ex B. Le specifically identified Dr.

15

Rippoepoe as a "<u>treating</u> psychologist" who can "describe the
mental effects of the hostile environment and/or discriminatory
treatment...."  *Id.* (emphasis supplied).  As a "treating"
physician, Rippoepoe is not obligated to provide defendants with
an expert report, argues Le.  Consequently, she has not violated
Rule 26 and any testimony by Dr. Rippoepoe is therefore
admissible, according to Le.


The Advisory Committee Notes to Rule 26 specifically exclude
treating physician testimony from the Rule 26 disclosure
requirements:

> The requirement of a written report in paragraph
> (2)(B), however, applies only to those experts who are
> retained or specially employed to provide such
> testimony in the case or whose duties as an employee of
> a party regularly involve the giving of such testimony.
> <u>A treating physician, for  example, can be deposed or
> called to testify at trial without any requirement  for
> a written report</u>.

F.R.Civ.P. 26 advisory committee's note.


> "A doctor is not an 'expert' if his or her
> testimony is 'based on ... observations during the
> course of treating'; if testimony was not 'acquired or
> developed in anticipation of litigation or for trial'
> and if the testimony is based on personal knowledge."
> Physicians who examined and prescribed treatment for a
> plaintiff "cannot be considered merely as expert
> witnesses whose examination was limited to obtaining
> information to be used solely for the purpose of
> testifying as an expert in the case."  *McGuire v.
> Davis*, 437 F.2d 570, 572 (5th Cir.1971).

> The former Fifth Circuit recognized "a

> well-settled proposition that a physician who has
> examined an injured party may describe what he has seen
> and  give his expert inference therefrom."  *McGuire*,
> 437 F.2d at 572.

*Brown v. Best Foods, A Division of CPC Int'l, Inc.*, 169 F.R.D.
385, 387 (N.D. Ala. 1996) (alterations and exclusions in the
original)(some citations omitted).  "If a treating physician
forms an <u>opinion of the causation</u> of an injury to a patient <u>and</u>
<u>the prognosis of the patient's condition during the treatment</u>
then such opinion may be expressed by the treating physician
without the necessity of a report under F.R.Civ.P. 26(a)(2)(B)."
*Hall v.  Sykes*, 164 F.R.D. 46, 48 (E.D. Va. 1995).


     Thus, Rippoepoe's proposed testimony is admissible if: 1)she
was not specifically retained to testify in anticipation of
trial, and 2) she formed the opinions, about which she will
testify, during treatment of Le.  Defendants do not dispute that
Rippoepoe is a treating physician rather than a physician
retained specifically for trail.  *See* UAB Brief in Support of
Motion to Exclude at ¶3.  However, this court cannot be certain
that Rippoepoe's proposed testimony relates <u>solely</u> to information
or opinions ascertained during treatment.  Because Le has
introduced no evidence regarding the substance of Rippoepoe's
testimony, the court is currently unable to determine if her
testimony is admissible under the treating physician exception to

Rule 26.  Consequently, the court will require that Le's counsel
file, in the clerk's office, a statement regarding the substance
of Rippoepoe's proposed testimony.  Should Le's counsel fail to
file such a statement by 4:30 p.m. on March 11, 1998, the court
will exclude Rippoepoe's testimony.

**B. Defendants' Motion To Amend The Scheduling Order**

Assuming Rippoepoe's proposed testimony is admissible, the
defendants seek to amend this court's scheduling order by
extending discovery for forty-five days past the date of Le's
deposition.[5]  Le opposes this motion because such an extension
would not provide her with sufficient time to respond to any
expert designation the defendants' might make, inasmuch as the
discovery cut off is set for April 30, 1998.

In support of their motion, to extend discovery, defendants
indicate that they have not received any medical records from Dr.
Rippoepoe, although they have repeatedly requested such.  Le
responds by pointing out that she has not yet received the
medical records from Dr. Rippoepoe and by noting that the
defendants are primarily responsible for the delay in taking Le's
deposition.

---

[5]  At the time defendants' filed their motion, Le had not yet been
deposed.

It appears to the court that both plaintiff's and defendants' counsel have been lax about their discovery obligations.  While it appears that the defendants have delayed taking Le's deposition and noticing Rippoepoe for deposition, it also appears that Le's attorney has made no effort to facilitate the release of Le's medical records from Rippoepoe.  Thus, in all fairness to the actual parties in interest, the court will expect the attorneys to submit a joint motion to amend the scheduling order.[6]  That motion should include the following: 1) the location and date upon which Le's deposition will be taken, 2) the date by which Rippoepoe will provide defendants with a copy of Le's medical records, 3) the date by which the parties will depose Rippoepoe, if necessary, 4) the date by which defendants must disclose its expert opinion evidence pursuant to Rule 26(a)(2)(B), and 5) the date upon which discovery will be completed.  Should the parties fail to submit such a motion by 4:30 on March 11, 1998, the court will: 1) exclude the testimony of Dr. Rippoepoe, 2) exclude any expert evidence the defendants may desire to introduce at trial, and 3) hold the parties to the original scheduling order.  Any further requests to extend discovery will not be taken favorably.

---

[6]  The court notes that the defendants' definition of a "joint" motion is not consistent with this court's definition of such a motion.  The court will expect a "joint" motion filed on behalf of all involved parties, not solely on behalf of all the defendants!

## C. Defendants' Motion To Exclude Le's Evidence of Damages

Finally, defendants seek to exclude Le's evidence of damages because she has failed to provide them with a computation of the claimed damages, calculated by category. *See* F.R.Civ.P. 26(a)(1)(C). The court will temporarily stay consideration of this motion. In the meantime, the court expects Le's counsel to provide the defendants with the Rule 26(a)(1)(C) disclosures by 4:30 on March 11, 1998. If Le's counsel fails to do so, such evidence will be excluded from trial.

### CONCLUSION

The court will grant summary judgment for the individual defendants on Le's Title VII claim and her § 1983 claim for retrospective relief. The court will also grant summary judgment for the Board on Lee's § 1983 claims and for all defendants on Le's Fourth Amendment claim. Finally, the court will grant defendants' motion to exclude any expert testimony by Le and deny defendants' motion to extend the discovery deadlines. However, the court will temporarily delay deciding on the admissibility of Le's treating physician's testimony and the admissibility of Le's

20

damages evidence.

A separate and appropriate order will be entered.

DONE this 23rd day of February, 1998.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE