```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ALABAMA
                        SOUTHERN DIVISION

HAHN LE WHITE,                    }
                                  }
     Plaintiff,                   }
                                  }        CIVIL ACTION NO.
v.                                }
                                  }        97-AR-1877-S
BOARD OF TRUSTEES OF THE          }
UNIVERSITY OF ALABAMA, et al,     }
                                  }
     Defendants.                  }
```

FILED
99 JAN 15 PM 3:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JAN 15 1999

**MEMORANDUM OPINION**

The court has before it a motion for summary judgment filed by all defendants in the above-entitled cause on June 30, 1998, targeting all claims not dismissed by order entered on February 23, 1998. This court regrets its inability to rule earlier on defendants' motion. Although some, if not all, of plaintiff's still pending claims may not survive motions pursuant to Rule 50(a), F.R.Civ.P., if filed by defendants after plaintiff concludes her evidence at trial, there is one aspect of the case that does not survive current Rule 56, F.R.Civ.P., scrutiny, namely, the claims for money damages under 42 U.S.C. § 1983 against defendants Robert Centor ("Centor"), Ronald Ficken ("Ficken"), Lisa Russell ("Russell"), and Martha Cook ("Cook"), in their individual capacities. Plaintiff's said claims are barred by qualified immunity.

Plaintiff, Hahn Le White ("White"), complains variously

against her employer, Board of Trustees of the University of Alabama ("U of A"), and the above-named four individuals. She invokes 42 U.S.C. § 1983, as to which U of A and the individuals in their official capacities are immune under the Eleventh Amendment and Alabama's sovereign immunity insofar as claims for money damages are concerned. White claims that Russell and Cook, her supervisors, said and did things, and Centor and Ficken, higher level officials of U of A, allowed Russell and Cook to say and do said things, while acting under color of law, in violation of White's federal constitutional right under the Fourteenth Amendment to the equal protection of the law. Translated as best the court can translate it, White claims that she, a person of Vietnamese origin, is the victim of hate speech by her immediate supervisors and that the other two defendants who were supervising the supervisors did not intervene on White's behalf.

The Eleventh Circuit leads the parade when it comes to the recognition of "qualified immunity" as virtually perfect insulation for individuals from § 1983 liability. The Rule 56 motion of Centor, Ficken, Russell and Cook claims qualified immunity. It is not for this court to question the Eleventh Circuit's interpretation of, or expansions upon, *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727 (1982) and *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034 (1987). This court is powerless to question the Eleventh Circuit's reading of the Supreme Court on "qualified

immunity." The Eleventh Circuit's reading is as follows:

> For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that "what he is doing" violates Federal law. Qualified immunity is a doctrine that focuses on the actual, on the specific, on the details of concrete cases...the line is not to be found in abstractions...but in studying how these abstractions have been applied in concrete circumstances.

*Lassiter v. Alabama A&M Univ*, 28 F.3d 1146, 1149-50 (11th Cir. 1994).

While rudeness, crudeness, incivility and insensitivity are to be discouraged in the public work environment, just as in the private work environment, the legitimately hurt feelings of a public employee, even an employee who is a member of a minority ethnic or other protected group, cannot form the basis for subjecting an offending supervisor to § 1983 damages. The totality of the remarks complained of in this case (remarks that will not be detailed here) may or may not create a hostile work environment that constitutes a violation of Title VII by U of A, White's only employer, and may or may not constitute a tort under state law, but the remarks that, for Rule 56 purposes, are assumed to have been made by Russell and Cook, and were tolerated by Centor and Ficken, do not "rise to the level" (to borrow a phrase) of a violation of some clearly established constitutional right or rights. Public managers cannot be required to walk on egg shells to the extent that everything they say to a subordinate potentially subjects them, by misinterpretation, or nuance, or thinness of skin, to a §

3

1983 claim. After all, every public employee is a member of at least one group that enjoys the right to equal protection.

This court thoroughly agrees with Judge Black's special concurrence in the Eleventh Circuit's most recent decision on "qualified immunity," namely, *Gonzalez v. Lee County Housing Authority,* 161 F.3d 1290, 1311 (11th Cir. 1998). There, Judge Black says:

> The purpose of qualified immunity is to protect government officials from liability for conduct they could not reasonably have known was unlawful. Much of federal constitutional law and statutory law is unpredictable and unclear in its application to particular circumstances. Thus, as the Court states, we require materially similar case law or a very specific statute before saying that a government official should have known her conduct was unlawful. There is no specific pre-existing case law applicable to this case.
>
> <u>On the other hand, we have recognized that in the extremely rare case a government official's conduct may be so egregious, in fact evil, as to be obviously contrary to federal law, so that no case law or statute needs to have recognized previously that materially similar conduct is unlawful. The facts alleged here, if true, make this that extremely rare case. More than a century after the Civil War and more than a quarter century after the great crusade for civil rights for black persons in this country, no government housing official could reasonably believe that she may lawful discriminate against black persons on the basis of race, or that she might punish another public official for refusing to discriminate in the course of her official duties against black persons on the basis of race.</u>

(emphasis supplied)  (footnote omitted).

In other words, according to Judge Black, there are instances in which a prospective action by a government actor is so obviously a violation of another's constitutional right as to obviate the need for a Westlaw search before the actor must either stop or can proceed with impunity. It is sort of like Justice Stewart's, "I

4

can't define it, but I know it when I see it."

Judge Black deviates somewhat from what this court thinks is the predominant view in the Eleventh Circuit, most recently expressed in *Harbert Intern., Inc. v. James*, 157 F.3d. 1271, 1284-85 (11th Cir. 1998), as follows:

> Because "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendan00000000t is doing violates federal law *in the circumstances*" *id.* at 1150 (emphasis in the original), <u>only plainly incompetent or lawless government officials will not be protected by qualified immunity</u>.
>
> In the face of the applicable standard, Harbert argues the law clearly established that a constitutionally protected property interest in receiving timely payment for work performed existed, and that one may not be deprived of such a property interest without due process of law. Assuming that is correct, Harbert's argument still fails to carry the day. <u>Harbert has set forth a general principle of law, but we have held time and again that clearly established general principles of law will seldom if ever suffice to strip a defendant of qualified immunity. *See, e.g., Dolihite v. Maughon By and Through Videon*, 74 F.3d 1027, 1040-41 (11th Cir.) ("A plaintiff must establish more than broad legal truisms; he or she must demonstrate that the law fixed the contours of the right so clearly that a reasonable official would have understood his acts were unlawful."), cert. denied, ___ U.S. ___, 117 S.Ct. 185, 136 L.Ed.2d 123 (1996); *D'Aguanno v. Gallagher*, 50 F.3d 877, 880 (11th Cir. 1995) ("To overcome the qualified immunity defense, citing precedent which establishes a general right will not do."); *Lassiter*, 28 F.3d at 1150.</u>
>
> In order to defeat the qualified immunity defense, it was incumbent upon Harbert to demonstrate the law was clearly established that what these defendants did, *in this case*, violated federal law. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that *what he is doing violates that right*.") *(emphasis added)*. <u>Because Harbert has pointed to no factually analogous case which establishes that the defendants' conduct was a deprivation of property without due process of law, it has failed to discharge its burden.</u> *See D'Aguanno*, 50 F.3d at 880 ("Because those cases plaintiffs cite do

5

not dictate and compel the conclusion that defendants' acts violated plaintiffs' rights to peaceable assembly and freedom of association, and because plaintiffs have failed to cite other authority which dictates that conclusion, plaintiffs have failed to show defendants violated clearly established federal law of which a reasonable officer would have known.").

<u>Harbert argues that requiring it to produce a factually analogous case to demonstrate that the defendants' conduct was unconstitutional ignores the Supreme Court's decision in United States v. Lanier, 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). We rejected that argument in Jenkins by Hall v. Talladega City Board of Education, 115 F.3d 821 (11th Cir.), cert. denied, ___ U.S. ___, 118 S.Ct. 412, 139 L.Ed.2d 315 (1997), where we explained:</u>

<u>We do not believe [that requiring the plaintiff to use pre-existing factually analogous decisions to demonstrate that the law is clearly established is] contrary to the spirit of [Lanier]; indeed, although general principles of law can provide fair warning, they do not necessarily provide such warning unless the constitutional rule at issue may be applied "with obvious clarity."</u>

*Id.* at 825-26 n. 3. As was the case in *Jenkins,* this is not a situation where a clearly established legal principle applies with such "obvious clarity" that a reasonable government official in the defendants' position would have know that their actions were unlawful.

(emphasis supplied in part in original and in part by this court).

When and how a reasonable employee of a state university is supposed to know that what he or she is about to say to a subordinate of Vietnamese extraction will be so offensive as to transgress constitutional norms, is, under the current "qualified immunity" regime, necessarily a matter for the trial court to decide. In this case, this particular court is particularly perplexed because it has been unable to find a single case in which the Supreme Court or the Eleventh Circuit has dealt with the sensibilities of a public university employee of Vietnamese origin. In fact, this court has not found such a case anywhere in the

6

federal court system.  Arguably analogous cases are also hard to find, especially when, because of qualified immunity's so-called "objectively reasonable standard", a judicial officer is <u>bound</u> to know what a reasonable public official should know is conduct proscribed by federal constitutional or statutory law.  When there is no "clearly established law" because there is no case precisely on point, decided either by the Supreme Court or by the Court of Appeals in the particular circuit where the subject transaction occurred, can the all-knowing trial court in the right case resort to the "obviousness" test recognized by Judge Black?  If the answer to a question of propriety confronted by a public actor is bound to be so clearly "Don's do it", that it is unnecessary to agonize over the matter by trying to find that binding decision on "all-fours", the inquiry may become: "Does this case fit into that small category described in Judge Black's concurrence?"[1]

The problem can be illustrated by reference to *Martin v. Baugh*, 141 F.3d 1417 (11th Cir. 1998). This particular court thought that the grossly retaliatory conduct of Baugh, the individual city supervisor whose conduct was discussed in *Martin v. Baugh*, was not only offensive to Martin, the public employee there being

---

[1] This court has long been intrigued by the anomaly created when an appellate court holds that , at the time of the questioned transaction, the law was not clearly established for § 1983 purposes, so that the public actor enjoys qualified immunity.  Some appellate courts have gone forward and criticized the questioned act or omission, some times even expressing the belief that the act or omission constitutes a constitutional violation, even though not clearly established when it occurred. Does such *dictum* clearly establish a proscription for the future?

7

verbally abused, and was <u>self-evidently</u> offensive to the First Amendment, so that qualified immunity did not protect Baugh from § 1983 liability.[2] However, this court was obviously wrong in denying qualified immunity to Baugh, because the undisputed circumstances that fully satisfied <u>this</u> court "failed to satisfy this court [another court, the Eleventh Circuit] that the law was 'developed in such a concrete and factually defined context' that Baugh should have known Martin's speech was constitutionally protected." 141 F.3d at 1421. In other words, in this kind of case what satisfies a <u>trial court</u> as to what a reasonable government actor should have known, at a particular time under particular circumstances may not satisfy its <u>reviewing court</u>. This court, then and now, believes that the First Amendment equally protects the freedom of employees and of employers to speak. The Eleventh Circuit found Martin to be without § 1983 recourse against Baugh, who used undisputedly vituperative language that eclipses anything Russell and Cook in the instant case are alleged to have said. Baugh's verbal attack on Martin was clearly in response to Martin's whistleblowing conversations with a city councilman and with the Fraternal Order of Police. Martin did no

---

[2] In reaching this conclusion, this court did not rely entirely upon *Martinez v. City of OpaLocka*, 971 F.2d 708 (11th Cir. 1991), as the Eleventh Circuit suggested in footnote 7 at 141 F.3d 1421. The speech in *Martinez* was simply used by this court as the closest available analogy, illustrative of protected speech by a public employee, that is, speech that involves a matter of public concern, the guarantee of which outweighs any possible disruption of workplace efficiency.

8

more than to reveal to obviously interested persons his honestly held belief, based on his considerable knowledge and experience, that a faulty and possibly fraudulent bidding process was underway, with the probable result that the city taxpayers would incur great and unnecessary expense while receiving an inferior emergency radio system. It follows that the arguably offensive remarks of Russell and Cook in the instant case were no more than an exercise of their First Amendment freedom, not outweighed by the fact, if it be a fact, that White might have been offended. There is an almost inevitable tension in the public work place between the First Amendment's simultaneous guarantee of freedom of expression to employer and to employee, compounded by the Fourteenth Amendment's competing guarantee of equal protection to the employee. This court gets a tension headache just thinking about it.

Russell and Cook were not on adequate notice that what they were about to say constituted a violation of White's guarantee of equal protection. Of course, if these two lower level supervisors are qualifiedly immune so are Center and Ficken, the two more remote U of A supervisors. Without a case directly on point, this court cannot say that it was so "obvious" that supervisory comments about persons eating dogs are constitutionally obnoxious when said in the presence of a person originally from Vietnam that finding a case in point is not necessary. Although this court may doubt that these inquiries about eating dog came from budding

anthropologists or culinary commentators, this court declines to submit to a jury the question of whether such an arguably ambiguous remark becomes a § 1983 violation.

Based on the foregoing, defendants' motion for summary judgment will be granted insofar as plaintiff's § 1983 claims for money damages against the individual defendants are concerned, and denied in all other respects.

DONE this 15th day of January, 1999.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE